IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

January 7, 2015


ELAINE DAMIANAKIS, as Personal )
Representative of the Estate of )
Nikitas Damianakis, )
                         )
           Appellant, )
                         )
v. )   Case No. 2D13-246
                         )
PHILIP MORRIS USA INC., )
                         )
           Appellee. )
_____ )

BY ORDER OF THE COURT:

Upon consideration of the motion for rehearing or clarification filed by the

appellee on August 18, 2014,

IT IS ORDERED that the appellee's motion for rehearing is denied and the

appellee's motion for clarification is granted. Accordingly, the opinion dated July 18,

2014, is withdrawn, and the attached opinion is substituted therefore.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.


JAMES BIRKHOLD, CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ELAINE DAMIANAKIS, as Personal )
Representative of the Estate of )
Nikitas Damianakis, )
)
      Appellant, )
)
v. ) Case No. 2D13-246
)
PHILIP MORRIS USA INC., )
)
      Appellee. )
_____ )

Opinion filed January 7, 2015.

Appeal from the Circuit Court for
Pinellas County; David A. Demers,
Judge.

Kent Whittemore of The Whittemore
Law Group, P.A., St. Petersburg; Bruce
Denson of Bruce H. Denson, P.A., St.
Petersburg; Steven L. Brannock,
Celene H. Humphries, Sara C.
Pellenbarg, Tyler K. Pitchford of
Brannock & Humphries, Tampa; and
Howard M. Acosta, St. Petersburg,
for Appellant.

Daniel F. Molony, Terri L. Parker,
Kristopher Verra, Emily R. Fedeles of
Shook, Hardy & Bacon L.L.P., Tampa;
Geoffrey J. Michael of Arnold & Porter
LLP, Washington, DC; and Joseph H.
Lang, Jr., of Carlton Fields Jorden
Burt, Tampa, for Appellee.

WALLACE, Judge.

Elaine Damianakis, as Personal Representative of the Estate of Nikitas Damianakis, appeals a final judgment in favor of Philip Morris USA, Inc., which followed the trial court's grant of Philip Morris's motion for summary judgment. The trial court granted Philip Morris's motion for summary judgment on the ground that the statute of limitations barred Mrs. Damianakis's claims, based on its prerequisite finding that Mr. Damianakis was not a member of the common class of plaintiffs that had been established in R.J. Reynolds Tobacco Co. v. Engle, 672 So. 2d 39 (Fla. 3d DCA), rev. denied, 682 So. 2d 1100 (Fla. 1996) (Engle I). The trial court reluctantly determined that, in accordance with Rearick v. R.J. Reynolds Tobacco Co., 68 So. 3d 944 (Fla. 3d DCA 2011), and Bishop v. R.J. Reynolds Tobacco Co., 96 So. 3d 464 (Fla. 5th DCA 2012), both of which interpreted the Florida Supreme Court's decision in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), cert. denied, 552 U.S. 941, reh'g denied, 552 U.S. 1056 (2007) (Engle III), it was required to grant the motion. We reverse the summary and final judgments, certify conflict with Rearick and Bishop, and remand for further proceedings.

In order to understand the issues in the case before us, it is necessary to have a basic understanding of the course of the Engle litigation. To this end, we provide a brief history of the pertinent portions of the Engle litigation in Section I of this opinion.

## I. BACKGROUND:  THE ENGLE PLAINTIFFS' CLASS

In 1994, six individuals filed a class action complaint against several tobacco companies and other entities ("the Defendants"), including Philip Morris, Inc., the appellant here.[1]  See Liggett Group, Inc., v. Engle, 853 So. 2d 434, 440 (Fla. 3d DCA 2003) (Engle II).  The plaintiffs sought damages for diseases and medical conditions brought on by their alleged addictions to nicotine.  Id.  The complaint alleged causes of action for strict liability, fraud and misrepresentation, conspiracy to commit fraud and misrepresentation, breach of implied warranty of merchantability and fitness, negligence, breach of express warranty, intentional infliction of mental distress, and equitable relief.  Engle I, 672 So. 2d at 40.  In an order dated October 31, 1994, the Engle trial court certified the plaintiffs' class as follows:

> All United States citizens and residents, and their survivors,
> who have suffered, presently suffer or have died from
> diseases and medical conditions caused by their addiction to
> cigarettes that contain nicotine. The class shall specifically
> exclude officers, directors and agents of the [d]efendants.

Id.  The Defendants then filed an interlocutory appeal of the non-final order certifying the plaintiffs' class.  In their appeal, the Defendants argued that individual issues predominated over common issues and that the plaintiffs had not proven that " 'the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law

---

[1]The other defendants were R.J. Reynolds Tobacco Company; Lorillard Tobacco Company; Lorillard, Inc.; The American Tobacco Company; Brown & Williamson Tobacco Corporation; Liggett Group, Inc.; Dosal Tobacco Corporation; The Council for Tobacco Research-U.S.A., Inc.; The Tobacco Institute, Inc.; and Brooke Group Ltd., Inc.  Engle I.

or fact affecting only individual members of the class.' " Id. at 41 (quoting Fla. R. Civ. P. 1.220(b)(3)).  The Third District disagreed:

> Although certain individual issues will have to be tried as to each class member, principally the issue of damages, *the basic issues of liability common to all members of the class will clearly predominate over the individual issues. We also reject the defendant[s'] point on appeal that the class was not adequately defined, as well as the defendant[s'] point concerning the issue of providing notice to class members.*

Id.  However, the Third District agreed with the Defendants' argument that the class, as defined, "would unduly burden Florida courts and taxpayers," and that the litigation involving a plaintiffs' class of over one million addicted smokers would "overwhelm the resources of a state court [and that] such a broad-based class is totally unmanageable and cannot be certified."  Id. at 41-42.

Nevertheless, the Third District concluded that decertification was not necessary.  Id. at 42 ("It does not follow, however, that the entire class action should be disallowed in this case.").  Accordingly, the Third District *affirmed* the trial court's class certification, but *modified* the class by replacing "[a]ll United States Citizens and residents" with "[a]ll Florida citizens and residents."  Id.  The Third District denied the Defendants' subsequent motions for rehearing and for certification to the Florida Supreme Court.  And, the supreme court denied the Defendants' petition for review. R.J. Reynolds Tobacco Co. v. Engle, 682 So. 2d 1100 (Fla. 1996) (table decision).

On November 21, 1996, the Engle trial court entered an Order on Class Notice, in which it memorialized the plaintiffs' class as modified by the Third District in Engle I.  A legal notice identifying the plaintiffs' class in this manner and instructing members of the public how to register as a member of the class was subsequently

published in sixty-eight Florida newspapers.  In addition to announcing that the class

would consist of "all Florida citizens and residents, and their survivors, who have

suffered, presently suffer or have died from diseases and medical conditions caused by

their addiction to cigarettes that contain nicotine," the notice also contained the following

exclusionary language:

> You are not a member of the class and there is no need to
> exclude yourself if you are a smoker or former smoker who
> has not manifested or been diagnosed with any disease or
> medical condition caused by your addiction to cigarettes that
> contain nicotine.

On December 17, 1997, the Defendants moved to decertify the class.  In

their motion, the Defendants again argued that common issues did not predominate

over individual issues, that the class device was not superior to other available methods

for adjudication of the controversy, and that the case was not manageable as a class

action.  On February 3, 1998, the Engle trial court denied the Defendants' motion to

decertify the class.  In its order, the trial court recognized that the size of the re-defined

class could include as many as 200,000 to 500,000 members and that individual

hearings would probably "be more extensive than was originally envisioned by the Third

District."  Nevertheless, the Engle trial court concluded that, "[d]espite this Court's

reservations about the manageability of this case as a result of the increased emphasis

on individual issues, this Court believes the Third District Court of Appeal's previous

opinion in this case is persuasive."  Accordingly, the trial court denied the Defendants'

motion to decertify the class.  On the next day, February 4, 1998, the Engle trial court

issued its Trial Plan.  The Trial Plan divided the proceedings into three phases.  Phase

1 would be a trial on the common issues of liability and causation for all class members,

and would include a preliminary determination as to which class members would ultimately be entitled to punitive damages. Phase II would be a trial on causation and, where causation was found, compensatory damages, with respect to the class representatives. The jury would also be asked to determine the amount of class-wide punitive damages. In Phase III, separate juries would determine issues unique to each individual class member, using the same process as described for Phase II.

The Defendants appealed the trial court's February 3, 1998 order denying the motion to decertify the class. The Third District dismissed the appeal upon its determination that the order was a nonreviewable, nonfinal order, and that there was no alternative basis for review under common law certiorari. However, the order of dismissal reminded the Defendants that they could seek review of the order denying their motion to decertify the class by appeal from an adverse final judgment.

Subsequently, the case went to trial. On July 7, 1999, at the conclusion of Phase I, the jury rendered a verdict for the plaintiff class on all counts. Engle III, 945 So. 2d at 1256-57. On April 7, 2000, at the conclusion of Phase II, the jury awarded compensatory damages totaling $12.7 million to three class representatives. The jury also determined that the total amount of punitive damages for the entire class would be $145 billion. Id. at 1257. The Defendants filed post-verdict motions for a new trial or remittitur, to set aside the verdict, for a directed verdict, and to decertify the class. On November 6, 2000, the Engle trial court entered an "Amended Final Judgment and Amended Omnibus Order" in which it entered final judgment in favor of the Engle class

plaintiffs[2] on most of the counts, but granted the Defendants' motion for a directed verdict on count seven of the complaint because this count had been previously dismissed by the court.  Id.

The Defendants appealed.  On appeal, the Third District reversed the judgment in all respects and directed that the Engle class be decertified.  Engle II, 853 So. 2d 434.  The pertinent points contained in the Third District's extensive and detailed opinion are as follows:  (1) the trial court's order certifying the class was reversed, id. at 442-50; (2) the trial court erred in allowing the jury to consider entitlement to punitive damages before the determination of compensatory damages, id. at 450-56; (3) judgment should have been entered in favor of the Defendants on all counts as to class representative Amodeo because all of his claims were barred by the statute of limitations, id. at 453 n.23; (4) judgment should have been entered in favor of the Defendants as to class representatives Farnan and Della Vecchia, because "their claims did not accrue until years after the cut-off date for class membership," id.; (5) the $145 billion punitive damages award was excessive as a matter of law, id. at 456-58; (6) the plaintiffs' counsel's improper and inflammatory arguments required reversal, id. at 458-66; and (7) the class action punitive damages claims were barred as res judicata by the "Florida settlement agreement" (the FSA) between the State of Florida and several of the defendants involved in the Engle litigation, id. at 467-70.  Notably, the Third District also held that the cut-off date for class membership was October 31, 1994, the date of the Engle trial court's original certification order.  Id. at 453 n.23.

---

[2]The trial court granted the Defendants' motion for a directed verdict as to several, but not all, of the claims made by the plaintiff Frank Amodeo based on a statute of limitations defense.

The Florida Supreme Court quashed Engle II in part and approved it in part. Engle III, 945 So. 2d 1246. The supreme court agreed with the Third District that the jury improperly awarded class-wide punitive damages before the determination of total compensatory damages and that the award of punitive damages was "clearly excessive." Id. at 1265 n.8. It also agreed that the statute of limitations barred class representative Amodeo's claims. Id. at 1276. On the other hand, the supreme court found that Ms. Farnan and Ms. Della Vecchia *were* proper members of the class. Id. Pertinent to the issues before us in the instant case, the supreme court also determined that the proper cut-off date for class membership was the date of the trial court's second order, November 21, 1996, not October 31, 1994. Id. at 1275. The supreme court also found that the FSA did *not* bar the instant litigation, id. at 1262; that the inappropriate arguments of the plaintiffs' counsel did not rise to the level of reversible error, id. at 1274; and, most significantly for our purposes here, that the Third District's affirmance of the Engle trial court's certification of the class in Engle I was the law of the case. Id. at 1266. Accordingly, a second appellate panel did not have the authority to substitute its judgment for that of a prior panel. Id. ("Rule 1.220(d)(1) was not designed to allow a district court to decertify a class, contrary to its previous affirmance of class certification and after notice to thousands of Floridians, a two-year trial, and an entry of a final judgment."). Finally, although the supreme court disapproved the Third District's reversal of the Engle trial court's certification of the class, it nevertheless found that the continued class action was not viable for Phase III of the Trial Plan. Id. at 1267-68. For this reason, the supreme court decertified the class as of the date the opinion was rendered. Id. at 1269, 1277. Nevertheless, the supreme court specifically held that

plaintiffs who qualified as class members as of the November 21, 1996, cut-off date "will be permitted to proceed individually with the findings set forth above given res judicata effect[3] in any subsequent trial between individual class members and the defendants, provided such action is filed within one year of the mandate in this case." Id. at 1277. The court's mandate issued on January 11, 2007. With this background in mind, we turn to the procedural history of the case before us.

## II. THE PROCEEDINGS IN THE DAMIANAKIS CASE

Nikitas Damianakis was born in Athens, Greece in 1940. He began smoking socially while still in Greece as a young man, but did not become a "regular" smoker until after he moved to the United States in early 1964. Once in the United States, he tried almost every available brand of cigarettes, but favored the Marlboro[4] and Winston[5] brands. Mr. Damianakis was soon smoking two or more packs a day. He eventually settled on Marlboro as his brand of choice.

In April 1994, a New Jersey doctor diagnosed Mr. Damianakis with emphysema and chronic obstructive pulmonary disease (COPD); Mr. Damianakis moved to Florida that same month. Doctors in Florida continued to treat Mr.

---

[3]This refers to the jury's findings in Phase I as to questions 1 (general causation), 2 (that nicotine in cigarettes is addictive), 3 (strict liability; placing defective and unreasonably dangerous products on the market), 4(a) (fraud by concealment), 5(a) (conspiracy to conceal), 6 (breach of implied warranty), 7 (breach of express warranty), and 8 (negligence). Engle III, 945 So. 2d at 1276-77. See also Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 428-30 (Fla. 2013) (holding that Engle common class action liability findings had res judicata effect on individual class plaintiffs' individual damages claims, and, coupled with the jury's findings in the Douglas trial, were sufficient to establish negligence on the part of the tobacco company defendants).

[4]Marlboro is a product of Philip Morris USA, Inc.

[5]Winston is a product of R.J. Reynolds Tobacco Company.

Damianakis for his breathing problems until his death in 2011. Over the years, Mr. Damianakis attempted to quit smoking many times, but he was unable to do so. He often told his family and his doctors that he had quit when, in fact, he had not. Mrs. Damianakis testified in her deposition that she was aware that her husband continued to smoke and that she caught him smoking a few times. In 2007 or 2008, Mr. Damianakis finally quit smoking completely.

Mr. Damianakis and his wife, Elaine, filed a personal injury lawsuit against the tobacco Defendants[6] on November 29, 2007, in the Pinellas County Circuit Court. This was within the one-year window established by the supreme court in Engle III. While the litigation was running its course, Mr. Damianakis died on February 4, 2011. After the death of her husband, Mrs. Damianakis timely filed a wrongful death lawsuit that the trial court consolidated with the original personal injury action.

## III. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND THE TRIAL COURT'S RULING:
## ROUND ONE

On October 12, 2010, the Defendants filed their first motion for summary judgment, arguing that Mr. Damianakis was not a member of the Engle class because his COPD and emphysema had been diagnosed before he moved to Florida. In their motion, the Defendants argued:

> To prove that he qualifies as a class member, [Mr. Damianakis] must establish that he was (1) a Florida Citizen

---

[6]The original complaint named essentially the same defendants as were named in the Engle cases, with some minor differences mostly resulting from interim mergers and acquisitions. However, by the time summary judgment was granted, all of the defendants had been dismissed from the instant action except Philip Morris. In this opinion, we continue to refer to "the Defendants" because there were multiple defendants for most of the procedural history of this case and because the motion for summary judgment at issue here was filed on behalf of multiple defendants.

- 10 -

and resident, (2) who suffered or died from a disease or medical condition (3) caused by his addiction to cigarettes that contain nicotine, (4) which disease or medical condition first manifested itself on or before November 21, 1996, *at a time when the smoker was a citizen and resident of Florida.* The undisputed evidence demonstrates that [Mr. Damianakis] was not a Florida citizen or resident in April of 1994, when he was diagnosed with his alleged smoking-related injuries.

As a result, the Defendants argued, summary judgment was proper (1) because Mr. Damianakis was not a member of the Engle class and therefore could not take advantage of the window established in Engle III, and (2) since he filed his complaint more than four years after his doctors diagnosed him with COPD, his individual claim was barred by the statute of limitations.

On December 10, 2010, the trial court denied the Defendants' first motion for summary judgment. In its ruling, the trial court observed:

According to the [Engle] order of November 21, 1996, the class includes: "All Florida citizens and residents, and their survivors, who have suffered, presently suffer, or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine . . . ." There is nothing in that order that excludes from the class Florida residents whose disease was diagnosed or manifested before they were Florida residents. In fact, the notice that was published and attached to the order does not include any such limitation . . . . It does not indicate in any way that you are not a member of the class if your disease became apparent before you established Florida residency. That is simply not part of the class description in the order of November 21, 1996.

The trial also court observed that, in Engle III,

The Florida Supreme Court gave anyone falling into that category one year after its mandate to pursue their claim. The Court specifically tied this period to the November 21, 1996 order—*not the November 21, 1996 order as modified by the January 6, 1998 order. Nor did the Court say members of the*

- 11 -

*class whose disease was diagnosed or manifested while they were Florida residents have one year after the mandate to pursue their individual claims.  They could have limited the protected class in that way—but they did not.  And this Court is not inclined to amend the Florida Supreme Court's decision.*

(Emphasis added.)  Finally, the trial court concluded that based on the notice to the public approved by the Dade County Circuit Court in its November 21, 1996, order, and as approved by the supreme court in Engle III,

> [T]o hold that the one year grace period does not apply to a Florida resident like Damianakis would seem to permit some form of "gotcha justice."  Everything, particularly the notice of the class circulated to the public, leads the reader to conclude that if you are or have been suffering from the involved diseases and it has been diagnosed or manifested, you are a member of the class.  Thus, people in that position may reasonably have foregone filing an individual action in justifiable reliance on the notice only to discover too late that there was an additional hidden requirement—to be a member of the class, the diagnosis or manifestation had to have occurred when they were a resident of Florida.  To their surprise they discover that they are not a member of the class and the time for their individual action has expired.  It is likely that this is one type of unfair outcome that the [Florida] Supreme Court was attempting to prevent with the grace period in [Engle III].[7]

## IV.  THE DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT AND THE TRIAL COURT'S RULING: ROUND TWO

Following the trial court's order denying summary judgment, the Third District decided Rearick v. R.J. Reynolds Tobacco Co., 68 So. 3d 944 (Fla. 3d DCA 2011).  The litigation in Rearick involved a wrongful death action brought on behalf of

---

[7]We commend the trial court for its thorough analysis in both of the orders on the Defendants' motions for summary judgment that it entered in this case.  The trial court's thoughtful approach to the issues presented has substantially assisted us in our task of appellate review.

the survivors of Lana Parzyszek.  68 So. 3d at 945.  Ms. Parzyszek lived in Florida from about 1987 or 1988 until 1991 or 1992, at which time she moved to Illinois.  Id.  In August 1993, Ms. Parzyszek was diagnosed with lung cancer, and she died that same year.  Id.  Helen Rearick, Ms. Parzyszek's mother, filed a wrongful death action in Florida on January 11, 2008.  Id.  The Rearick defendants moved for summary judgment on the basis that Ms. Parzyszek was not an Engle class member because she was not a Florida citizen or resident when she was diagnosed with lung cancer in 1993.  Id.  Rearick countered that the claim was timely because it was filed within a year of the Engle III mandate, and that the decedent's smoking-related symptoms had indeed manifested during her Florida residency.  Id. at 945-46.  The trial court granted the defendants' motion for summary judgment on the ground that the record did not establish that Ms. Parzyszek's symptoms first manifested during her Florida residency.  Id. at 946.  The Third District agreed and affirmed.  Id.

Bishop v. R.J. Reynolds, 96 So. 3d 464 (Fla. 5th DCA 2012), involved a wrongful death lawsuit brought on behalf of a decedent, Robert L. Ramsay.  Mr. Ramsay was a resident of Florida when he was diagnosed with lung cancer in 1991.  Id. at 466.  Mr. Ramsay did not respond to treatment, and in May of 1992, he was advised that he had weeks to live.  Upon learning of this dire prognosis, Mr. Ramsay moved to Virginia Beach, where he died on June 14, 1992.  Id.  The representative of Mr. Ramsay's estate timely filed a wrongful death claim within a year of Engle III's mandate.  Id.  The trial court granted the Defendants' motion for summary judgment on the basis that Mr. Ramsay was not a Florida resident at the time of his death.  Id. at 467.  The Fifth District reversed this ruling.  Id.

- 13 -

Following the issuance of <u>Rearick</u> and <u>Bishop</u>, the Defendants in this case renewed their motion for summary judgment.  They based their renewed motion, in pertinent part, on statements contained in the <u>Rearick</u> and the <u>Bishop</u> opinions.  In <u>Rearick</u>, the Third District said:

> The case was filed under <u>Engle v. Liggett Group, Inc.</u>, 945 So. 2d 1246 (Fla. 2006).  <u>Engle</u> defined the class as "[a]ll Florida citizens and residents, and their survivors, who have suffered, presently suffer and who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine."  <u>Id.</u> at 1274.  *The qualification for membership in the <u>Engle</u> class requires plaintiff to show that the decedent was a resident of the state of Florida at the time of a "medical diagnosis" of a smoking-related disease or at the time evidence of the causal relationship of the cause of action had [otherwise] manifested itself.*  <u>Id.</u>  We affirm because there is no record evidence that Parzyszek's disease manifested itself during her Florida residency so as to satisfy the criteria for membership into the <u>Engle</u> class.

63 So. 3d at 945 (emphasis added).  In <u>Bishop</u>, the Fifth District said:

> In <u>Engle III</u>, the supreme court held that the <u>Engle</u> class included <u>Florida residents</u> who have suffered, presently suffer, or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine, and that the "cut-off" date for class inclusion was November 21, 1996.  <u>In considering whether certain putative class representatives qualified as class members, the supreme court, looking to the plain language of the trial court's revised class description, held that the "critical event [to qualify for Engle class membership] is not when an illness was actually diagnosed by a physician, but when the disease or condition first manifested itself."</u>  <u>Engle III</u>, 945 So. 2d at 1276.  We believe it necessarily follows that inclusion in the <u>Engle</u> class requires Florida residence or citizenship when the disease or condition first manifests itself, not at the time of death.  <u>See Rearick v. R.J. Reynolds Tobacco Co.</u>, 68 So. 3d 944, 945 (Fla. 3d DCA 2011).

- 14 -

96 So. 3d at 467-68 (emphasis added). The Defendants argued that according to Reardon and Bishop, a claimant had to prove that he or she was a resident of Florida at the time his or her disease manifested in order to qualify as a member of the Engle class of plaintiffs. Relying on these two new cases, they repeated their earlier arguments that because Mr. Damianakis was diagnosed with COPD before he moved to Florida, he could not take advantage of the window provided for in Engle III, and he could not file an independent lawsuit because the statute of limitations had expired. The trial court disagreed with the Defendants' arguments but, concluding that it was bound to follow Rearick and Bishop, reluctantly granted the Defendants' summary judgment motion. After the entry of final judgment for the Defendants, Mrs. Damianakis filed this appeal.

## V. DISCUSSION

### A. *The Standard of Review*.

Our standard of review of an order granting final summary judgment is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). If no factual issues exist, appellate review focuses on whether the trial court correctly determined that the moving party was entitled to prevail as a matter of law. Id.

### B. *Manifestation/Certification of Conflict*.

First, we note that we have no disagreement with the results in either Rearick or Bishop. We would reach the same result in both cases under our own analysis. However, we disagree with the suggestions contained in both of these opinions that in order to qualify as an Engle class plaintiff, a claimant must have been a citizen or resident of Florida at the time his or her smoking-related illness manifested

itself.  Without a doubt, an individual cannot be a member of the Engle class if his or her smoking-related illness first manifested *after* November 21, 1996 (the cut-off date), regardless of whether that person was a Florida resident at the time.  However, it does not follow that because a person's smoking-related illness first manifested *before* that person became a Florida resident, he or she is excluded from the class.  On the contrary, the only requirements for membership in the Engle class are that (1) the individual's smoking-related illness manifested before the cut-off date, (2) he or she was a resident or citizen of Florida on or before the cut-off date, and (3) the individual's smoking-related illness resulted from the individual's addiction to cigarettes containing nicotine.

We must examine the statement in Rearick upon which the Defendants rely:  "The qualification for membership in the Engle class requires plaintiff to show that the decedent was a resident of the state of Florida at the time of a 'medical diagnosis' of a smoking-related disease or at the time evidence of the causal relationship of the cause of action had [otherwise] manifested itself."  68 So. 3d at 945.  The Third District discerned this purported requirement of the supreme court's opinion in Engle III at 1274.  However, no statement in Engle III supports such a requirement.  Nowhere in the Engle III opinion, let alone on page 1274, does the supreme court hold that a smoking-related illness must have been diagnosed or manifested *while* the plaintiff was a resident of Florida.

The closest the supreme court came to making such a statement was, "the critical event is not when an illness was actually diagnosed by a physician, but when the disease or condition first manifested itself."  Engle III, 945 So. 2d at 1276.  In

- 16 -

the section where this statement appears, the supreme court was explaining why the Third District's rationale for reversing the final judgments in favor of certain individual class representatives after Phase II was error. The Third District had held that "[s]ince Farnan was diagnosed in April 1996, and Della Vecchia was diagnosed in February 1997, they are clearly excluded from the class and the judgment in their favor must be reversed." Engle II, 853 So. 2d at 454 n.23. In other words, the Third District's reasoning for finding that Ms. Farnan and Ms. Della Vecchia were not members of the Engle class was because their diagnoses had occurred *after* the class cut-off date, which it said was October 31, 1994.

The supreme court disagreed for two reasons. First, the applicable cut-off date was November 21, 1996, not October 31, 1994. Engle III, 945 So. 2d at 1275. Second, the critical fact was not diagnosis but manifestation. Id. at 1276. Because Ms. Farnan had been diagnosed with lung cancer in March 1996, this "clearly demonstrate[ed] her disease had manifested by [the cut-off date]." Id. With regard to Ms. Della Vecchia, the supreme court found that "it was noted by her doctors in early 1997 that she had a past medical history of 'COPD' and significant hypertension. Thus, Della Vecchia's medical records indicate that she had been suffering from a tobacco-related disease prior to the time of certification and is also properly included as a class member." Id. Moreover, there was evidence in the Engle trial record that Ms. Della Vecchia had begun and had continued to smoke for much of her life while she was a resident of New York. See Engle II, 853 So. 2d at 448 n.14. We are unable to determine from the available records or from Engle II or Engle III whether Ms. Della Vecchia's "past medical history" of COPD and hypertension had actually "manifested"

- 17 -

before her move to Florida.  However, there are enough references to her having lived most of her life outside of Florida to suggest that this may have been the case.[8]

The supreme court's holding about class representatives Farnan and Della Vecchia was related to the Third District's ruling that they were excluded from the class based on an erroneous finding that the diagnosis and/or manifestation of their symptoms occurred *after* the class cut-off date.  But this does not invoke a corollary that persons whose symptoms manifested *before* they became Florida residents should be excluded from the class.  In fact, the supreme court repeated at least twice that the class included all persons who were Florida residents as of the class cut-off date of November 21, 1996.  Engle III, 945 So. 2d at 1255-57 (general discussion), at 1277 ("The class consists of all Florida residents fitting the class description as of the trial court's order dated November 21, 1996."), and at 1275 ("The plain language of the class certification indicates that the trial court anticipated that the class would be cut off or limited to the date of final certification.  The phrase 'who have suffered, presently suffer or have died' supports the view that the class should include only those people who were affected in the past or who were presently suffering at the time the class was recertified by the trial court.").  Nothing about these statements compels the result for which Philip Morris contends.

We also note that *when* a plaintiff's smoking-related illness first manifested is usually a jury question.  For example, the Florida Supreme Court held that in a case

_____

[8]As noted by the supreme court, the Defendants in Engle "did not argue that any of the proposed class representatives, including Farnan and Della Vecchia, were not proper members of the class because of the class cut-off date." Engle III, 945 So. 3d at 1256 n.2.

- 18 -

involving a latent or "creeping" disease, like COPD, "the cause of action accrues when the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a causal relationship to the manufactured product."  Carter v. Brown & Williamson Tobacco Corp., 778 So. 2d 932, 934 (Fla. 2000).  The supreme court also held that whether the symptoms had manifested themselves in a way that would put a reasonable person on notice that the injury was caused by smoking (thus triggering the running of the statute of limitations) was a question for the jury and not a proper subject for summary judgment.  Id. at 938-39; see also Frazier v. Philip Morris, 89 So. 3d 937, 946 (Fla. 3d DCA 2012) ("The issue was not whether Ms. Frazier 'had' the creeping, stealthy disease of COPD/emphysema before May 5, 1990; the issue was whether she knew, or reasonably should have known, enough to permit her to commence a non-frivolous tort lawsuit against the appellees on the basis of those physical, observable, patent symptoms and effects ('manifestations') before that date.").

In this case, Philip Morris has not argued that Mr. Damianakis's preliminary diagnosis of COPD in April 1994 placed him on notice then that his disease was causally related to his smoking "enough to permit [him] to commence a non-frivolous tort lawsuit against the appellees."  See Frazier, 89 So. 3d at 946.  Instead, Philip Morris has only argued that Mr. Damianakis's symptoms manifested no later than April 1994.  Thus, the issue of when Mr. Damianakis's symptoms first manifested for statute of limitations purposes—whether before, during, or after April 1994—has yet to be litigated.

## C. *The January 6, 1998, Choice-of-Law Order*.

In their briefs, both in the trial court and on appeal, the Defendants argue that a January 6, 1998, trial court order changed the definition of Engle class membership. The order to which they refer was the culmination of several motions and affidavits filed by the Engle Defendants attacking the "adequacy of class notice" and arguing that choice-of-law issues rendered certification of the class unworkable. One of the motions asked the trial court to take judicial notice of the applicability of foreign law to the proceedings. In its appellate brief, Philip Morris refers to this sequence of events as follows: "The issue then arose whether Florida law could be applied to the members of that class . . . ."

During a hearing held by the Engle trial court on November 17, 1997, the Defendants' counsel argued that "the class is likely gone if we are correct on choice-of-law. So it is a decertification issue."[9] Counsel then said that he would not address the decertification issue because that issue was not yet before the trial court. However, counsel went on to argue extensively about how the class, as certified, involved choice-of-law issues potentially involving several states. Counsel concluded that even though the class of plaintiffs had been limited to Florida residents and citizens, it still included individuals who had a more significant relationship with other states, implicating complex choice-of-law issues and making the class excessively large and unwieldy. As

---

[9]As conceded by counsel for the defendants at the November 17, 1997, hearing, the choice-of-law issue was argued in the defendants' briefs to the Third District in the first appeal, but the Third District did not find those issues worthy of discussion in Engle I.

the Engle trial court observed, the obvious point of counsel's argument was that the court should consider decertification.

Following these hearings, on January 6, 1998, the Engle trial court issued an order on the choice-of-law arguments presented in the November 17 and December 5, 1997, hearings. In its untitled order, the trial court held that it would only apply Florida law to all of the class plaintiffs, regardless of whether their exposure to tobacco may have initially occurred in some other state. The court based its rationale on its analysis of the significant relationship test as applied to choice-of-law issues. See Proprietors Ins. Co. v. Valsecchi, 435 So. 2d 290, 294 (Fla. 3d DCA 1983) (holding that the place of injury would take precedence only when it is the state that is most significantly connected to a particular issue in litigation). The Engle trial court reasoned:

> In the present case, the Defendants do business in Florida, the Plaintiffs reside in Florida, the place of injury/manifestation has, in some measure, taken place in Florida, therefore the state where the initial exposure has also taken place bears comparatively little in relation to the occurrence (medical diagnosis/causal connection) and the parties. . . . [I]t is difficult to see what interest a foreign state would have in the action concerning both Florida plaintiffs and defendants.
>
> . . . .
>
> Florida therefore has the most intimate relationship with the instant case based on the fact that the Plaintiffs and Defendants are Florida residents. The states in which members of the Plaintiff class were previously domiciled has little to do with the parties or the cause of the accident. Its ties to the litigation are too insignificant to warrant the application of foreign state law.
>
> . . . .
>
> *In light of the above this court believes that any class members, who were previously domiciled in another state, cause of action arose in Florida if 1) the Plaintiffs were first medically diagnosed or the Plaintiffs' condition supplies some evidence of the causal relationship to the manufactured production and 2) the Plaintiffs were residents*

- 21 -

*of the state of Florida at the time of said medical diagnosis or at [the] time said evidence of the causal relationship of the cause of action had manifested itself.*[10]

The Court's rationale being that if such 'previously domiciled' members of the Plaintiff class were allowed to participate in the instant litigation without their injury having occurred or have been diagnosed while being domiciled in Florida, potential plaintiffs, who have not established Florida as their domicile, would be free to exercise forum shopping. The court believes this ruling brings to the legal community the responsibility and the authority to uniformly resolve any choice-of-law controversies while at the same time providing legal norms for safeguarding the needs of the interstate system.

Given that the Defendants' place of business occurs in Florida, the relevant policies of Florida, and most importantly, the certainty, predictability and uniformity of result, the greater weight of these factors which are listed in the Restatement (Second) [of Conflict of Laws §146 (1971)] compels this court to apply Florida law.

(Emphasis added.) As we see it, the language quoted above in italics is the crux of the legal conundrum with which the trial court grappled in this case and that is now before us for resolution.

More than once in its appellate brief, Philip Morris claims that the Florida Supreme Court relied on the italicized language from the January 6, 1998 order in Engle III. After a thorough review of the proceedings leading up to the Engle trial court's order, the order itself, and the supreme court's opinion in Engle III, we are convinced that this is not the case. The supreme court's lone comment that might plausibly be referable to that order occurs in the course of the court's discussion about why the Third District's first Engle opinion affirming the certification of the class was the law of the case. We

_____

[10]This may be the source of the statement in Rearick that the Third District discerned in the supreme court's Engle III opinion.

- 22 -

quote the comment here: "[T]he Engle II court ignored the trial court's pretrial ruling that only Florida law would apply when it stated that the 'choice-of-law analysis in the present case will require examination of numerous significantly different state laws governing the different plaintiffs' claims.' " Engle III at 1267 (quoting Engle II, 853 So. 2d at 449). Concerning this comment, we cannot be sure whether the supreme court was referring to the January 6, 1998 order, or some other pretrial order. The supreme court never cites to or mentions the January 6, 1998 order at all. We conclude that nothing in Engle III indicates that the supreme court endorsed or approved the statement contained in the January 6, 1998 order upon which Philip Morris relies so heavily. Moreover, the supreme court's reference—in 2006—to the Third District's affirmance of the class definition resulting in the November 21, 1996 Order on Class Notice as the law of the case confirms our conviction that the statement relied upon by Philip Morris in the trial court's 1998 order—issued more than a year after the class definition was approved and published for the benefit of potential class members—did not operate to modify or further restrict the Engle plaintiffs' class beyond the limitations imposed by Engle I.

Philip Morris also repeats the Engle trial court's concerns about possible forum shopping. With all due respect to the busy trial judge who had to manage the initial litigation in Phases I and II of the Engle case, we find this concern unpersuasive, especially as applied to the plaintiff in the instant case. In order to forum shop, Mr. Damianakis would have had to have known—in April 1994—that twelve years later the supreme court would acknowledge November 21, 1996, as the correct cut-off date. Such a feat would presuppose that Mr. Damianakis had the ability to predict the future.

In fact, given the unlikely procedural history of the Engle litigation, we suggest that it would have been impossible for anyone intentionally to move to Florida before November 21, 1996, just to become an Engle class plaintiff. Moreover, when the class was first certified in 1994, the class consisted of "all United States citizens and residents . . . ." Thus, in 1994, without knowing that the Third District would later restrict the class, an individual who was aware of the pending Florida litigation would have had no reason to move to Florida at all. For these reasons, we think that forum shopping in this case is not—and never was—a legitimate concern.

## D. *Philip Morris's Choice-of-Law Argument is a Red Herring*.

Philip Morris finds additional support for its position in the choice-of-law quagmire that it contends will result if the Engle class is not limited to smokers whose disease manifested while they were residents of Florida. According to Philip Morris, the Florida Supreme Court in Engle III "implicitly approved of this limitation" in reliance on the Engle trial court's January 6, 1998 order. Philip Morris concludes: "If the class definition had not been limited to people whose claims could be governed by Florida law, the Phase I trial would have violated due process for failure to apply substantive choice-of-law rules." We disagree. The purported choice-of-law problem is just a red herring.

It is common knowledge that the majority of Florida's citizens were not born in Florida. As a result, it is probable that many of the potential Engle class plaintiffs spent most of their "smoking" lives in another state or country. As the Third District said in Engle II:

> During pretrial proceedings, undisputed evidence showed
> that nearly 50% of Florida residents who are over 50 years

- 24 -

old—those most likely to be class members—moved to Florida after reaching age 50. Moreover, more than 65% of all current and former smokers in Florida moved here after they became regular smokers. The demographic evidence presented at trial strongly suggested many class members were not Florida residents at the time of diagnosis or manifestation.

853 So. 2d at 448. The parties were well aware early on in the Engle proceedings that the class included many individuals who were not Florida residents at the time of diagnosis or manifestation; nevertheless, these persons were members of the class.

The Defendants raised this issue again in their brief on their second appeal to the Third District. They argued:

> In an effort to sidestep such [choice-of-law] problems and salvage class certification, the trial court improperly short-circuited Florida's "most significant relationship" rule for choice-of-law. *Before the trial began, the court announced that Florida's substantive law would apply to all class members who resided in Florida at the time they were diagnosed with, or manifested, a smoking-related illness, regardless of their smoking histories and prior states of residence.*

(Emphasis added.) The Third District agreed with the Defendants:

> If diagnosis or manifestation did not occur during residency in Florida, each court in the Phase 3 proceedings will have to perform a full choice-of-law analysis and apply the law of the state with the most significant relationship to the parties and the occurrence. Especially in a state which has a highly transient population, choice-of-law problems present an insuperable roadblock to smokers' class actions, even where the class is limited to one state's residents.

Engle II, 853 So. 2d at 448. Based, in part, on its determination that choice-of-law analyses would "require examination of numerous significantly different state laws," the Third District concluded that common questions did not predominate over individual issues, and as a result, the class should be decertified. Id. at 449-50. But the Florida

- 25 -

Supreme Court expressly rejected this analysis and result, observing that the Third District had "ignored the trial court's pretrial ruling that only Florida law would apply." Engle III, 945 So. 2d at 1267. In this regard, the supreme court further explained:

> This case came before the Third District in Engle II *after it had affirmed the class certification and after the conclusion of a trial on all common issues.* Thus, there is no need to engage in an abstract analysis of the propriety of separate proceedings on common limited liability issues.

Id. (emphasis added). Moreover, as the supreme court also said, the claims of all plaintiffs in this case *are* governed by Florida law. See id. This conclusion does not compel the additional requirement that the plaintiff must have been a citizen or resident of Florida when his or her smoking-related illness first manifested.

Philip Morris's injection of choice-of-law issues into this case is either an argument for decertification of the class that comes far too late, or, more probably, an attempt to reduce drastically the size of the class by excluding a large number of otherwise eligible individuals from it. The repeated discussion of how choice-of-law issues can cause problems in a large class action is unpersuasive. To underline the obvious, both Phase I and Phase II of the class action are over.

To summarize, Mr. Damianakis, like Ms. Della Vecchia and many other members of the plaintiffs' class, spent most of his adult, "smoking" life in another state or country. The possibility that some of them—including Mr. Damianakis and possibly Ms. Della Vecchia—may have had symptoms that "manifested" before they moved to Florida, does not necessarily exclude them from the class. Nothing in Engle III requires such a conclusion. Accordingly, we conclude that as long as an individual was a citizen or resident of Florida as of the cut-off date of November 21, 1996, and his or her

- 26 -

smoking-related illness "manifested" on or before that date, then he or she satisfies the residency and citizenship requirement of Engle class membership. The first manifestation of a smoking-related illness in a state or country other than Florida is not relevant to this determination.

## VI.  CONCLUSION

When the Defendants renewed their motion for summary judgment, in the absence of controlling precedent from this court, the trial court was obliged to follow Rearick and Bishop and to grant the renewed motion.  See System Components Corp. v. Fla. Dep't of Transp., 14 So. 3d 967, 973 n.4 (Fla. 2009); Scottsdale Ins. Co. v. Desalvo, 666 So. 2d 944, 946 (Fla. 1st DCA 1995); State v. Hayes, 333 So. 2d 51, 53 (Fla. 4th DCA 1976).  However, we think that the trial court got it right the first time when it denied the Defendants' motion.

We hold that the January 6, 1998 order that the Engle trial court entered more than a year after it had defined the class and issued and arranged for the publication of the class notice, did not modify the already existing Engle class.  In addition, we hold that Mr. Damianakis satisfied the residency and citizenship requirement of the Engle class and that he was entitled to take advantage of the one-year filing window created in Engle III.[11]  In support of our holding, we observe that Mr.

---

[11]Mr. Damianakis's personal representative will still need to prove the remaining elements of class membership at trial; i.e., that Mr. Damianakis was addicted to cigarettes containing nicotine and that this addiction resulted in a smoking-related disease or medical condition.  Also, although the record suggests that the trial court and the parties focused on April 1994 as the date of manifestation in this case, to the extent there remains some relevant dispute about the date the cause of action actually accrued, this will be subject to determination by a jury at trial.

Damianakis was a citizen and resident of Florida on or before the cut-off date of November 21, 1996, and note that Philip Morris has conceded for the purpose of this litigation that Mr. Damianakis's smoking-related illness manifested before the cut-off date. Accordingly, we reverse the order granting summary judgment and the final judgment in favor of Philip Morris and we remand for further proceedings consistent with this opinion. We certify conflict with <u>Rearick</u> and <u>Bishop</u> to the extent that the holdings in those cases are inconsistent with this opinion.

Reversed and remanded for further proceedings; conflict certified.

KHOUZAM and SLEET, JJ., Concur.