[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11907

_____

D.C. Docket No. 3:09-cv-13482-WGY-HTS

PATRICIA HARRIS,
as personal representative of the Estate
of Gerald Harris,

Plaintiff - Cross
Appellant - Appellee,

versus

R.J. REYNOLDS TOBACCO COMPANY,
PHILIP MORRIS USA, INC.,

Defendants - Cross
Appellees - Appellants,

LORILLARD TOBACCO COMPANY,
et al.,

Defendants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(November 20, 2020)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

NEWSOM, Circuit Judge:

This is an "*Engle* progeny" case—we're told it's one of the last that we're likely to see. For the uninitiated, "*Engle*" refers to an entire generation's worth of litigation in which Florida-resident smokers (or, as in this case, their personal representatives) have sought recovery from tobacco companies for cigarette-related injuries. *See, e.g.*, *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006). We'll describe the *Engle*-related cases' sprawling procedural history in more detail, but for present purposes, suffice it to say that the litigation has unfolded in three "Phases": In Phase I, a state-court jury determined, with respect to an entire class of smokers, that in manufacturing and marketing nicotine-based cigarettes the tobacco companies engaged in tortious misconduct. In Phase II, the same jury found that the companies' misconduct injured each of three representative plaintiffs and awarded them damages. Then, in Phase III—following decertification of the class—thousands of individual smokers brought suits for their own injuries.

Importantly here, if an individual Phase III plaintiff can demonstrate that he was a member of the original *Engle* class, he needn't prove from scratch that the tobacco-company defendants tortiously manufactured and marketed their products; rather, upon proving class membership, he is entitled to the preclusive effect of the

2

Phase I jury's liability findings.  To demonstrate that he is a member of the *Engle* class, the plaintiff has to show, among other things, that he suffered from a medical condition that both (1) was caused by cigarette addiction and (2) manifested on or before the class cut-off date—November 21, 1996.

Patricia Harris brought an individual Phase III suit on behalf of her deceased husband, Gerald Harris.  She sought the benefit of the Phase I jury's findings, arguing that Mr. Harris was a member of the original class based on two medical conditions.  Her Phase III jury found that one of Mr. Harris's conditions—oral-cavity cancer—was caused by cigarette addiction but did *not* manifest on or before the class cut-off date and that the other condition—heart disease—manifested on or before the class cut-off date but was *not* caused by cigarette addiction.  Although neither condition alone satisfied both requirements of class membership, the district court nonetheless concluded that Mr. Harris was a class member, gave Mrs. Harris the benefit of the Phase I jury's liability findings, and entered judgment on a substantial verdict in her favor.  After careful review, we reverse.

# I

## A

More than 25 years ago now, a group of plaintiffs, one of whom was named Howard Engle, filed a class-action suit in Florida state court against several tobacco companies, including the defendants here, R.J. Reynolds and Philip

Morris.  These "*Engle*" plaintiffs asserted various tort claims, including, as relevant for our purposes, negligence, product defect, fraudulent concealment, and conspiracy to fraudulently conceal.  *See Engle*, 945 So. 2d at 1257 n.4.  They alleged that the companies' tortious conduct caused them to suffer from a number of diseases and medical conditions.  *See id.* at 1256, 1276–77.

The state trial court certified a class of injured smokers and planned to divide the jury trial into three phases.  During Phase I, the jury would decide issues common to the entire class, such as whether the tobacco companies acted tortiously, whether nicotine cigarettes are addictive, and whether cigarette addiction causes certain medical conditions.  If the class plaintiffs proved tortious conduct, addictiveness, and general causation during Phase I, the trial would proceed to Phases II and III.  During Phase II, the same jury would decide whether the companies' tortious conduct specifically injured three representative plaintiffs, and if so, the amount of damages to which each was entitled.  During Phase III, the same jury would decide whether the companies' tortious conduct injured the remaining unnamed class members, and if so, what their damages were.  *See Engle*, 945 So. 2d at 1256–58.

Phases I and II proceeded according to plan.  During Phase I, the jury found, among other things, that the tobacco companies were negligent, had placed defective and unreasonably dangerous products on the market, fraudulently

4

concealed material information, and conspired to fraudulently conceal material information. *Engle*, 945 So. 2d at 1277. The Phase I jury further found that nicotine cigarettes are addictive and that cigarette addiction causes 20 medical conditions—including, as relevant here, heart disease, oral-cavity cancer, COPD, and lung cancer. *Engle*, 945 So. 2d at 1277. During Phase II, the jury found that the companies' tortious conduct injured each of the three representative plaintiffs—including one who will play a role in this case, Angie Della Vecchia— and awarded those three plaintiffs a collective $12.7 million. *Engle*, 945 So. 2d at 1257, 1276.

Before Phase III commenced, the tobacco companies appealed. The Florida Supreme Court upheld the jury's Phase I findings and, importantly for our purposes, its Phase II award to Della Vecchia. *See Engle*, 945 So. 2d at 1276–77. But with respect to the impending Phase III, the court held that "continued class action treatment [was] not feasible" because the same jury couldn't be expected to decide the particularized claims of hundreds of thousands of remaining plaintiffs. *Id.* at 1277; *see also id.* at 1268. Accordingly, the court decertified the class, but only for the purpose of deciding the issues that had been left to Phase III—specific causation and damages. *Id.* at 1277. The court provided that any "plaintiffs within the class" could file individual actions within one year of its 2006 mandate. *Id.* In

5

those individual actions, class members would be entitled to the preclusive effect of the jury's Phase I findings. *Id.* at 1269.

In other words, a plaintiff suing the same tobacco-company defendants wouldn't need to re-establish any of the Phase I findings so long as he could prove that he was a class member. Upon a plaintiff's demonstration of class membership, his jury would be instructed that the Phase I findings were true as to him—*i.e.*, that the defendants were negligent, placed defective and unreasonably dangerous cigarettes on the market, fraudulently concealed material information, and conspired to fraudulently conceal material information—and then would decide only the remaining issues of specific causation and damages. By contrast, a plaintiff who could *not* demonstrate class membership would have to prove every element of his claims from scratch, including that the companies had acted tortiously in the first place.

How, then, would a Phase III plaintiff prove that he was a class member? The Florida Supreme Court provided a class definition: "The class consists of all Florida residents fitting the class description as of . . . [the final class-certification date,] November 21, 1996." *Id.* at 1277. A Florida resident "fit[] the class description" if he suffered from a disease or medical condition that was "caused by [his] addiction to cigarettes." *Id.* at 1274, 1277. Therefore, a plaintiff was an *Engle* class member if (in addition to being a Florida resident) he suffered from a

disease or medical condition (1) that was caused by cigarette addiction and (2) that

manifested on or before the November 21, 1996 class cut-off date.  *See id.*

**B**

Born in 1940, Gerald Harris smoked for most of his life.  He suffered from

heart disease, oral-cavity cancer, vocal-cord cancer, and lung cancer.  He died of

lung cancer in 2012.  His wife Patricia Harris survived him and now serves as his

personal representative.

Within one year of the *Engle* mandate, a group of plaintiffs including Mr.

Harris brought Phase III individual actions against R.J. Reynolds, Philip Morris,

and several other tobacco companies.  They claimed to be original *Engle* class

members and sought to benefit from the preclusive effect of the jury's Phase I

findings.  Their cases were removed to federal court and severed.  In 2013, after

Mr. Harris died of lung cancer, Mrs. Harris filed an amended complaint in this

individual case alleging negligence, product defect, fraudulent concealment, and

conspiracy to fraudulently conceal.

At trial, Mrs. Harris sought to establish her claims, in part, by relying on the

Phase I findings, so she had to prove that Mr. Harris met the *Engle* class

requirements.  She argued that Mr. Harris was an *Engle* class member based on

two medical conditions: heart disease and oral-cavity cancer.[1]  As for Mr. Harris's

---

[1] All parties agree that Mr. Harris was a Florida resident.

7

heart disease, the parties stipulated that it manifested on or before the class cut-off date, but the jury found that it was not caused by cigarette addiction. As for his oral-cavity cancer, the jury found that it was caused by cigarette addiction but did not manifest on or before the class cut-off date.

*Gerald Harris*

|  | **Heart Disease** | **Oral-cavity Cancer** |
|---|---|---|
| **Caused by cigarettes?** | No | Yes |
| **Timely manifested?** | Yes | No |

The district court then allowed the jury to proceed to answer several questions that would be relevant only if Mr. Harris were an *Engle* class member. In particular, the jury found that R.J. Reynolds's and Philip Morris's conduct injured Mr. Harris and that Mrs. Harris was entitled to approximately $1.7 million in damages. (The district court later reduced the award to $650,660.)

R.J. Reynolds and Philip Morris moved for judgment in accordance with the jury's verdict. They argued that because the jury found no medical condition that both (1) was caused by cigarette addiction and (2) manifested on or before the class cut-off date, Mr. Harris was not an *Engle* class member. And, they contended, because Mr. Harris was not a class member—and because Mrs. Harris had relied on the Phase I findings rather than proving those matters herself—there

8

was no basis for finding that the tobacco companies had engaged in tortious conduct. Accordingly, they said, they were entitled to judgment as a matter of law.

The district court denied the companies' motion and granted judgment for Mrs. Harris. It did so—even in the face of the class-membership disconnect that the companies emphasized—because of the Florida Supreme Court's determination in the original *Engle* appeal that class representative Angie Della Vecchia was entitled to collect damages. The district court inferred from the Florida Supreme Court's discussion of Della Vecchia's case that the *Engle* class included anyone who had at least one medical condition that was caused by cigarette addiction and at least one condition that manifested on or before the class cut-off date—even when the two were *different* conditions. Accordingly, the district court concluded that when combined, Mr. Harris's heart disease (which timely manifested but was not caused by cigarette addiction) and oral-cavity cancer (which was caused by cigarette addiction but did not timely manifest) met the class definition. R.J. Reynolds and Philip Morris filed a renewed motion for judgment as a matter of law and a motion for a new trial, arguing that the district court had misread the Florida Supreme Court's opinion. The district court denied both motions.

R.J. Reynolds and Philip Morris appealed.[2]

## II

We must decide whether, despite having no medical condition that alone satisfied both requirements of *Engle* class membership, Mr. Harris was a class member and thus entitled to the preclusive effect of the Phase I findings. This is a question of law, so we review it *de novo*. *See United States v. Futrell*, 209 F.3d 1286, 1288–89 (11th Cir. 2000).

## A

The Full Faith and Credit Act requires federal courts to give the same effect to state judicial proceedings as would be given in the state where the proceedings occurred. *See* 28 U.S.C. § 1738; *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1181 (11th Cir. 2017) (en banc). Among other things, that means we must give a state-court determination the same preclusive effect as it would command in the tribunals of the state where the determination was made. *Walker v. R.J. Reynolds Tobacco Co.*, 734 F.3d 1278, 1286 (11th Cir. 2013). Here, Mrs. Harris sought to rely on the preclusive effect of the jury's Phase I findings in *Engle*. So we must give those findings preclusive effect to the same extent that Florida courts would.

---

[2] Mrs. Harris cross-appealed the district court's ruling that she was not entitled to punitive damages on her negligence and product-defect claims. Because we will reverse the district court's judgment in Mrs. Harris's favor, we won't reach her cross-appeal.

Florida courts give preclusive effect to the Phase I findings if—but only if—a Phase III plaintiff was a member of the *Engle* class.  *See Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 428–32 (Fla. 2013); *see also Graham*, 857 F.3d at 1182–86.  That's because if a plaintiff was a member of the *Engle* class, he was technically a party to the original action, and preclusion relieves him from having to re-prove the matters found there.  The dispositive question, then, is whether Mr. Harris was a member of the *Engle* class.

As the *Engle* litigation progressed, the class definition evolved.  The initial class notice defined the class to comprise all United States citizens and residents who had "suffered, presently suffer or who ha[d] died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine."  *Engle*, 945 So. 2d at 1274.  A state appellate court restricted the class definition geographically to cover only citizens and residents of Florida.  *See R.J. Reynolds Tobacco Co. v. Engle*, 672 So. 2d 39, 42 (Fla. Dist. Ct. App. 1996).  Eventually, questions arose as to the specific date by which someone had to have "suffered, presently suffer[ed], or . . . died" from a cigarette-caused medical condition in order to qualify for class membership.  Another state appellate court held that, to qualify, a plaintiff must have suffered from that medical condition by the initial class-certification date, October 31, 1994.  *See Liggett Grp. Inc. v. Engle*, 853 So. 2d 434, 453 n.23 (Fla. Dist. Ct. App. 2003).  On appeal, though, the Florida

Supreme Court pushed the date back. It held that the class "consists of all Florida residents fitting the class description as of . . . November 21, 1996." *Engle,* 945 So. 2d at 1277.

Accordingly, the *Engle* class ultimately comprised those Florida residents who suffered from a medical condition that both (1) was caused by cigarette addiction and (2) manifested on or before the class cut-off date of November 21, 1996. *Id.* at 1274, 1277. The Florida Supreme Court has since repeatedly reaffirmed this class definition in materially identical terms.[3]

Although Mr. Harris was a Florida resident, the jury did not find that he had a medical condition that both was caused by his cigarette addiction and manifested on or before November 21, 1996. Instead, the jury found that he had heart disease that manifested on or before that date but was *not* caused by his cigarette addiction,

---

[3] In 2013, for instance, the court referred to the class as comprising Florida residents who "on or before November 21, 1996, suffered from a disease or medical condition legally caused by addiction to cigarettes." *Douglas*, 110 So. 3d at 426 n.4 (quotation marks omitted). More recently, in 2016, the court described the class's parameters in these terms:

> "[T]he requirements for class membership are: (1) that the plaintiff was a Florida resident, (2) that he or she either suffered or was suffering from a smoking related illness before November 21, 1996, and (3) that his or her addiction to nicotine caused the disease." The "key point in determining *Engle* class membership," as stated by the [appellate court] based on the correct interpretation of this Court's decision in *Engle*, "is pinpointing when the plaintiff began 'suffering' from the smoking-related illness."

*R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So. 3d 1028, 1040 (Fla. 2016) (quoting *R.J. Reynolds Tobacco Co. v. Ciccone*, 123 So. 3d 604, 615 (Fla. Dist. Ct. App. 2013)); *see also id.* at 1031 (describing the class as requiring that "the smoker 'have suffered' or be 'presently suffering' from a tobacco-related disease or medical condition as of the cut-off date").

12

and oral-cavity cancer that was caused by his cigarette addiction but did *not* manifest on or before that date.  So as a matter of elementary logic, he was not a member of the *Engle* class.  QED.

**B**

There's a twist, though, that results from the Florida Supreme Court's treatment of class representative Angie Della Vecchia in its original *Engle* decision.  Della Vecchia was one of the original class representatives, meaning that she was a party to the Phase I trial and that the same jury that had found that the companies engaged in misconduct also found, during Phase II, that their misconduct caused her injury and that she was entitled to a monetary award.  Based on its reading of the Florida Supreme Court's opinion, the district court here concluded that Della Vecchia met the requirements for class membership despite "a mismatch between the disease that timely manifested (COPD) and the disease for which legal cause was found (lung cancer)."  The district court so concluded because, in its brief discussion of Della Vecchia's case, the Florida Supreme Court (1) never explicitly said that Della Vecchia's timely-manifesting COPD was caused by cigarette addiction, (2) acknowledged that Della Vecchia's cigarette-caused lung cancer was "diagnosed" after the class cut-off date, and yet (3) nonetheless upheld her damages award.  *See Engle*, 945 So. 2d at 1255, 1276.  Accordingly, the district court concluded that anyone with at least one medical

13

condition caused by cigarettes and another manifesting on or before the class cut-off date satisfies the *Engle* class requirements.  On this basis, the court held that Mr. Harris's heart disease and oral-cavity cancer could similarly be combined to make him a class member.

For multiple reasons, we disagree with the district court's conclusion that the Florida Supreme Court's treatment of Della Vecchia requires treating Mr. Harris as a class member despite the disconnect between cigarette-causation (yes as to oral-cavity cancer, no as to heart disease) and timely manifestation (yes as to heart disease, no as to oral-cavity cancer).

For starters, as we read its opinion, the Florida Supreme Court pretty clearly seemed to think that Della Vecchia had at least one—and quite possibly two—medical conditions that met both *Engle* class requirements.  First, lung cancer:  The Phase II jury had expressly found that Della Vecchia's lung cancer was caused by cigarette addiction.  The jury was not asked about a manifestation date, but the Florida Supreme Court went out of its way to explain that although Della Vecchia's lung cancer was *diagnosed* in 1997, the "critical event" was "when the disease or condition first *manifested* itself"—and then to emphasize that she was having lung problems "prior to the time of certification."  *Id.* at 1276 (emphasis added).  The only point in drawing the diagnosis-manifestation distinction would

14

have been to establish that Della Vecchia's cigarette-caused lung cancer manifested in time, thus satisfying both class requirements.[4]

Second, and separately, the Florida Supreme Court's opinion suggests that it thought that Della Vecchia's COPD—which is one of the medical conditions that the *Engle* Phase I jury found to be caused by cigarette addiction, *see Engle*, 945 So. 2d at 1277—also met both class requirements.  The court explained that her COPD manifested "prior to [the class cut-off date]" and was "tobacco related."  *Id.* at 1255.  If the court thought that Della Vecchia's COPD was caused by something other than cigarettes, it likely wouldn't have called it "tobacco related."[5]

So—combining the first and second points—while the district court's conclusion here depended entirely on the assumption that Della Vecchia had *no* medical condition that alone qualified her for class membership, the Florida Supreme Court's own decision indicates that, in fact, she had *two*.[6]

---

[4] Indeed, the Florida Supreme Court has since interpreted the *Engle* court's discussion of Della Vecchia's lung cancer as proof that "the plaintiff does not need to have been formally diagnosed or know that the symptoms were tobacco-related prior to" the class cut-off date to satisfy the timing requirement.  *R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So. 3d 1028, 1041 (Fla. 2016); *see also Damianakis v. Philip Morris USA Inc.*, 155 So. 3d 453, 462–63 (Fla. Dist. Ct. App. 2015) (citing Della Vecchia for the proposition that "the critical fact was not diagnosis but manifestation").

[5] The Florida Supreme Court appears to use the terms "tobacco-related" and "caused by smoking" interchangeably.  *See*, *e.g.*, *Ciccone*, 190 So. 3d at 1036.

[6] Or perhaps even three.  The Florida Supreme Court also said that Della Vecchia's "tobacco related" hypertension manifested before the class cut-off date.  We don't include it in our analysis because it's unclear whether hypertension is an *Engle*-qualifying medical condition.  One qualifying medical condition is coronary heart disease, "including . . . blood vessel damage."  *See* Engle *Phase* I Verdict Form (Fla. 11th Cir. Ct. July 7, 1999).  Hypertension

15

*Angie Della Vecchia*

|  | **Lung Cancer** | **COPD** |
|---|---|---|
| **Caused by cigarettes?** | Yes | Yes |
| **Timely manifested?** | Yes | Yes |

Moreover, and in any event, the Florida Supreme Court's brief discussion of Della Vecchia's class membership reads as dicta. To begin, the issue of Della Vecchia's class membership was never properly raised or litigated. "[T]he defendants," the court explained, "did not argue that . . . Della Vecchia [was] not [a] proper member[] of the class because of the class cut-off date." 945 So. 2d at 1256 n.2. Furthermore, so far as we can tell, Della Vecchia's class membership had no legal consequence (which might explain why the defendants there didn't bother to contest it). The whole point of determining whether someone is a member of the *Engle* class is to determine whether he was—in the eyes of the law—a party to Phase I and thus entitled to rely on its liability findings. Della Vecchia, as a named class representative, was indisputably a party to Phase I. The Florida Supreme Court was thus constrained to conclude that the Phase I findings applied in her case. Accordingly, its brief discussion of Della Vecchia's case shouldn't serve as a definitive guide to deciphering class membership—especially

---

means high blood pressure, which describes the force that blood exerts against the walls of blood vessels.

where it would require ignoring the plain language and import of the court's own class definition.[7]

Finally, the district court's reading of *Engle*—under which a plaintiff qualifies for class membership provided that he has one condition that is caused by cigarette addiction and another one that timely manifests—would generate bizarre results. Under the district court's theory, a plaintiff would, for example, be entitled to the full preclusive effect of a 1999 jury's findings about the tobacco companies' conduct even if he didn't smoke his first cigarette until 2006—after the companies had changed their products to comply with all applicable legal duties—so long as in 1996 he had some other qualifying medical condition caused by something wholly unrelated to smoking. It seems to us inconceivable that the Florida Supreme Court meant to sanction such a regime.

\* \* \*

---

[7] It appears that the Florida Supreme Court addressed Della Vecchia's class membership only because the state appellate court had assumed that "[c]lass membership is a prerequisite to participating in and receiving the benefits of a class action trial." *Liggett Grp. Inc. v. Engle*, 853 So. 2d 434, 453 n.23 (Fla. Dist. Ct. App. 2003). To support this proposition, the appellate court cited a single case from a district court in Michigan that was about the inapposite question whether a class definition was sufficiently precise to determine which *unnamed* plaintiffs were members of the class. *See id.* (citing *Garrish v. United Auto., Aerospace & Agric. Workers of Am.,* 149 F. Supp. 2d 326, 331 (E.D. Mich. 2001)). The answer to the question whether all *named* plaintiffs need to qualify for membership in the class seems to be no. *See, e.g.*, 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1761 (3d ed. 2020) ("[I]f the action is brought by . . . several representative parties, it only is necessary that one of them be a qualified member of the class as long as the other prerequisites of Rule 23(a) are satisfied.").

Mr. Harris had no medical condition that both was caused by cigarette addiction and manifested on or before the class cut-off date. Accordingly, he wasn't an *Engle* class member, and nothing in the Florida Supreme Court's treatment of Angie Della Vecchia requires us to conclude otherwise. And because Mr. Harris wasn't a class member, Florida courts wouldn't give preclusive effect to the *Engle* Phase I findings in this case. Under the Full Faith and Credit Act, we don't either.

Without the preclusive effect of the Phase I findings, Mrs. Harris has failed to prove essential elements of her claims. Most fundamentally, she failed to demonstrate that the tobacco-company defendants acted tortiously. Instead of pleading and proving that R.J. Reynolds and Philip Morris were negligent or made defective products, she relied exclusively on "the *Engle* Phase I findings [to] conclusively establish" their tortious conduct and then "br[ought] this action upon the limited remaining issues in dispute." Without those Phase I findings, Mrs. Harris failed to prove the defendants' misconduct. Accordingly, the defendants are entitled to judgment as a matter of law.[8]

---

[8] Mrs. Harris now requests a new trial to try to satisfy those elements with new evidence. But she already had the opportunity to do just that, either at the same trial or by requesting two separate trials on two alternative theories of liability. We can't allow parties to proceed to a verdict and then decide to restart the litigation because they want to try a different tack. *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2805 (3d ed. 2020) (explaining that as a general matter, "a party may not seek a second trial on the basis of a theory not urged at the first trial"); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 528 (11th Cir.

18

## III

Because Gerald Harris didn't have a medical condition that both was caused by cigarette addiction and manifested on or before November 21, 1996, he wasn't an *Engle* class member.  Because he wasn't an *Engle* class member, Mrs. Harris wasn't entitled to the preclusive effect of the Phase I jury's findings.  And without those findings, she failed to prove essential elements of her claims.  Accordingly, we **REVERSE** the district court's denial of the defendants' motion for judgment in accordance with the verdict.

---

2019) (rejecting the notion that "a plaintiff can proceed on one theory of the case throughout the trial and then be entitled to a do-over under a different theory").